**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

MARY E. MILLER,                    :

     Plaintiff,                    :

                           Case No. 3:11cv00284

 vs.                    :

                           District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                 :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,           :

     Defendant.                    :

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Mary E. Miller brings this case challenging the Social Security

Administration's denial of her applications for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB).  She claims disability from an injury to her left hip

and ankle, "always tired," and "mental stress."  (*PageID##* 217, 230).

After various administrative proceedings, Administrative Law Judge (ALJ) Amelia

G. Lombardo denied Plaintiff's DIB and SSI applications based on her conclusion that

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

Security Act.  (*PageID##* 69-83).  The ALJ's non-disability determination and the

_____

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

resulting denial of benefits later became the final decision of the Social Security

Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C.

§405(g), 1383(c)(3),  which Plaintiff is now due.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the

Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc.

#6), and the record as a whole.

Plaintiff asserted in administrative proceedings that she is eligible to receive DIB

and SSI because she is under a "disability" within the meaning of the Social Security Act.

In the present case, Plaintiff seeks a reversal of the ALJ's decision, and a remand of this

case to the Social Security Administration for payment of benefits.  At minimum, Plaintiff

seeks to remand this claim for further proceedings.  The Commissioner contends that an

order affirming the ALJ's decision is warranted.

## II.     BACKGROUND

### A.     Plaintiff's Vocational Profile and Hearing Testimony

Plaintiff was 45 years old on the alleged onset date of disability, which defined her

as a "younger person."  *See* 20 C.F.R. §§404.1563(c); 416.963(c)[2]; *see also PageID*# 226.

Plaintiff has a high school education and attended two years of college.  *See* 20 C.F.R.

§404.1564(b)(4); *see also PageID*## 222-23.  She has past relevant work experience as a

nurse assistant and sales associate.  (*PageID*# 218).

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

Plaintiff testified at the administrative hearing that in 2006 she fell off a lawn tractor while at home and underwent physical therapy for approximately nine months as a result. (*PageID#* 105). She testified that she suffers from constant head and neck pain (with muscle spasms behind her ear that go down her neck); left ankle and hip pain; low back pain; and shoulder pain. (*PageID##* 105, 107). She described her pain as going down into her back and chest – primarily down her left side. (*PageID#* 110). Her medication included Vicodin and Topamax, but it made her groggy and caused her to have trouble focusing. (*PageID##* 110-11). She also testified as to an increase in her pain when the weather changes. (*PageID#* 111). She reported that she wakes up at three o'clock in the morning because of pain. (*PageID#* 113).

Plaintiff estimated that she could walk a city block without stopping. Her ability to stand varies with her level of pain and when she "stiffens up". (*PageID#* 111). She testified that "without a problem," she could lift four to five pounds (any weight above that threshold and her left hand cannot grip the item or keep control). (*PageID##* 111-12).

During a typical day, Plaintiff will eat something after she wakes up; cut up some vegetables and put them in the refrigerator for later; get her younger children off to school; shower; sort laundry; check on appointments; get dinner ready; and make sure her children have everything they need for school. Plaintiff testified that she typically will rest in her bed or on a recliner during the day. (*PageID##* 113-15).

Plaintiff noted that she takes care of her children, but they help her with the housework. Plaintiff can do some laundry in the basement, but notes that once she is downstairs she stays there for awhile. She can go to the grocery store when scooters are available for her to use there. (*PageID#* 112). She is able to dress and groom herself, but stated that she cannot do this as well as she used to. (*Id.*). She can cook, but if she is hurting too badly, her children may have to eat sandwiches or open a can "because [she] can't complete it because [she is] hurting so bad." (*PageID#* 120). Plaintiff estimated she spends about five hours in the recliner each day, either resting or napping. (*Id.*).

Plaintiff testified that the activities described by Dr. Flexman included activities she was doing prior to when her disability began, not after. (*PageID##* 121-22).

William Bruning, a vocational expert (VE), also testified at the hearing. (*PageID##* 124-28). The ALJ provided a series of hypotheticals regarding Plaintiff's residual functional capacity (RFC) to the VE. *See id.* Based on Plaintiff's RFC, the VE testified that Plaintiff could perform her past relevant work. (*PageID#* 125). The VE next testified that there were 67,500 medium exertional jobs, and 70,000 light exertional jobs in the regional economy, which Plaintiff could perform. (*PageID##* 125-26). The VE testified that these jobs were full-time, would not allow rest periods (other than normal breaks), and would not allow a person to miss more than two days of work per month. (*PageID#* 126).

**B.**     **Medical Records and Opinions**

**1.**     **Dayton Pain & Preventative Medicine/Mark Rorrer, M.D.**

Plaintiff was treated by pain management specialist, Dr. Rorrer, from January to October 2006. (*PageID##* 286-98). Plaintiff was treated with decompression therapy and maintained on Vicodin for her low back and ankle pain. In November and December 2006, Dr. Rorrer opined to Plaintiff's disability insurance carrier that she could not lift more than 10 pounds and was unable to walk, stand, bend, climb, lift, or stoop. (*PageID##* 674-75). He noted, however, that Plaintiff should expect improvement in three to six months. (*Id.*).

## 2. Thomas W. Henderson, M.D.

Thomas W. Henderson, M.D., a rheumatologist, first evaluated Plaintiff in September 2006 on referral from Dr. Rorrer. (*PageID##* 381-82). At that time, Plaintiff reported that due to pain she was unable to sit up for more than one hour. She experienced insomnia. (*PageID#* 381). On examination, Dr. Henderson noted diffuse tender points in the trapezius, medial borders of the scapula, posterior paraspinous muscles, right lateral epicondyle, left anserine bursa and both sacral notches. (*PageID#* 382). Dr. Henderson diagnosed post-traumatic fibromyalgia syndrome, degenerative disc disease, and osteoarthritis of the spine. (*Id.*). Plaintiff's rheumatoid factor, ANA screen, and metabolic panel were negative. (*PageID##* 383-84). In June 2007, Dr. Henderson reported that Plaintiff could return to work at the end of June 2007. (*PageID#* 692). In August 2007, Dr. Henderson noted Plaintiff continued to have diffuse tender points "as before 11/18 total." (*PageID#* 377). Dr. Henderson's treatment notes show that on subsequent examinations, diffuse points were also found. (*PageID##* 374-76).

On October 11, 2007, Dr. Henderson reported to Plaintiff's disability carrier that Plaintiff could lift up to 10 pounds occasionally but no amount of weight frequently. He did not think she could sit for more than two hours continuously and could only stand/walk for one hour intermittently. Dr. Henderson also found that Plaintiff would have problems with reaching above shoulder level. (*PageID#* 686-87). Dr. Henderson noted that Plaintiff suffered from diffuse musculoskeletal pain with diffuse tender points consistent with fibromyalgia. (*PageID#* 686). Dr. Henderson did not think that Plaintiff could work and was unsure when she would be able to return to work. (*PageID#* 688).

Plaintiff returned to Dr. Henderson in 2009, who continued to find diffuse tender points on examination. Dr. Henderson recommended a trial of Cymbalta. (*PageID#* 672).

### 3.     <u>Andreas Syllaba, D.O.</u>

Dr. Syllaba treated Plaintiff for pain management between 2001 and 2002, and again from January to March 2007. (*PageID##* 299-327). An MRI of Plaintiff's lumbar spine taken in July 2002 showed mild degenerative disc disease from L3-L4 through L5-S1, and moderate L4-L5 facet osteoarthropathy. (*PageID#* 283).

On March 19, 2007, Dr. Syllaba noted that Plaintiff's diagnoses included lumbar radiculopathy, sacroiliitis, post-traumatic fibromyalgia and ankle tendonopathy. He opined that Plaintiff could not sit, stand, or walk for more than one hour continuously and could not lift/carry any weight. (*PageID##* 676-78).

In April 2007, Dr. Syllaba noted he last saw Plaintiff on March 30, 2007.

(*PageID*## 299-300).  Dr. Syllaba noted that Plaintiff was unpleasant with his staff and

felt she demanded too much paperwork.  (*PageID*# 299).  She also refused a random

urine drug screen.  (*PageID*# 301).  According to Dr. Syllaba, Plaintiff was "extremely

belligerent[,] using the 'F word' a number of times and storming out of [his] office."

(*PageID*# 300).  Dr Syllaba noted that Plaintiff had "repeatedly demanded that we fill out

a number of different forms for disability and then has accused our staff of misplacing

paperwork.  She has been caught several times by several staff members trying to grab

her chart and flip through it.  I am concerned that she is trying to remove damaging

information from her medical chart."  (*Id.*).  Dr. Syllaba did opine, however that Plaintiff

had a valid pain syndrome and that she was "currently disabled from a Bureau of

Disability perspective based on comorbidities of probable psychiatric issues, addiction

issues, decreased physical function, and chronic pain." (*Id.*).

### 4.  Stephen W. Duritsch, M.D.

Plaintiff was examined by Stephen W. Duritsch, M.D., on behalf of the Ohio

Bureau of Disability Determination on July 17, 2007.  (*PageID*## 345-52).  Dr. Duritsch

noted myofascial tenderness and tightness primarily in the cervical paraspinals, and

posterior shoulder girdle musculature.  (*PageID*# 346).  There was a slight decrease in

ankle range of motion on the left.  (*PageID*# 350).  X-rays of the left ankle showed soft

tissue swelling both medially and laterally of uncertain etiology and significance, though

some arthritic changes were noted.  (*PageID*# 351).  Dr. Duritsch was uncertain of the

7

origin of left hip and left ankle pain, though he noted Plaintiff had been diagnosed with tenosynovitis in the past. Dr. Duritsch also noted Plaintiff might have fibromyalgia, "for which she does not have the typical fibromyalgia tender zones on today's examination." (*PageID#* 346).

### 5. Teresita Cruz, M.D.

Dr. Cruz reviewed the medical evidence on behalf of the Ohio BDD in August 2007. (*PageID##* 366-73). Dr. Cruz limited Plaintiff to occasionally lifting fifty pounds and frequently lifting twenty-five pounds. Dr. Cruz notes that Plaintiff would only be able to stand, walk and/or sit about six hours out of an eight-hour work day, with unlimited push/pull operation. (*PageID#* 367). She further limited Plaintiff to occasional climbing of ramps/stairs, and never climbing ladders/rope/scaffords. (*PageID#* 368). Dr. Cruz felt that Plaintiff's allegations are not considered to be fully credible. (*PageID#* 371).

### 6. Lawrence P. Goldstick, M.D.

Plaintiff treated with neurophysiologist, Dr. Goldstick, between December 2007 to February 2009 for follow-up of post-traumatic head pain. (*PageID##* 510-23). Dr. Goldstick noted that Plaintiff had paracervical spasm and myofascial trigger points involving the paracervical region and the trapezius region. (*PageID#* 521). There was also pain with neck and shoulder movement. (*Id.*). Dr. Goldstick diagnosed cervical strain, trapezius strain, and paracervical spasm due to the accident. (*PageID#* 522). He recommended that Plaintiff try physical therapy again. Plaintiff attended therapy through

8

April 2008 with only limited progress. (*PageID## 412-39*). Follow-up examinations continued to show significant myofascial trigger points. (*PageID## 518-19*).

On February 16, 2009, Dr. Goldstick opined that Plaintiff could not sustain even sedentary work activity on a regular and continuing basis and would likely miss work more than three times a month. (*PageID# 517*). Dr. Goldstick noted that Plaintiff could not lift more than 10 pounds due to pain in her neck radiating into her head. (*PageID# 511*). Dr. Goldstick noted that Plaintiff was unable to perform rapid alternating movements, bend or twist, and could not sit for prolonged periods of time. (*Id.*). Dr. Goldstick noted that Plaintiff could only stand, walk, or sit between zero to four hours a day. (*PageID# 513*). Dr. Goldstick further limited Plaintiff in postural activities and reaching. (*PageID## 514-15*).

On a Basic Medical Form completed in March 2009, Dr. Goldstick reached similar conclusions. (*PageID# 628-30*). Dr. Goldstick found that Plaintiff was still having significant cervical and lumbar pain, ambulated with slightly stooped posture, and was unable to return to work. He noted moderate lumbar spasm and cervical spasm with decreased range of motion of the neck, and also paracervical spasm and myofascial trigger points involving the paracervical region on examination. (*PageID# 643*). Regarding Plaintiff, he noted "that she has not had any other difficulties except for continuing pain." (*Id.*). Dr. Goldstick opined that Plaintiff was suffering from cervical strain, cervical sprain, lumbar sprain relating to her industrial accident, and there may be a component of fibromyalgia. (*Id.*).

9

### 7. **Anthony Jacob, M.D.**

Plaintiff underwent a physical medicine and rehabilitation consultation by Dr. Jacob on May 7, 2008. (*PageID*## 456-57). He found trigger points in the bilateral upper trapezius muscles and tenderness of the left sacroiliac joints and the left peroneal tendon. Ankle flexion increased the pain. Deep tendon reflexes were symmetrical. She ambulated with a normal gait pattern. Her forward flexion, extension, and lateral flexion of the lumbar spine were decreased towards end range. She can walk on her heels and toes without difficulty. Dr. Jacobs diagnosed chronic low back and neck pain and myofascial pain syndrome. He recommended a multidisciplinary approach to management of her pain to include physical and occupational therapy, pool therapy, medication management, relaxation training, and psychological counseling.

### 8. **Jeelani Mukhdomi, M.D.**

Plaintiff treated with another pain management specialist, Dr. Mukhdomi, from September 2008 to February 2009. (*PageID*## 478-509). She was again treated with Vicodin (*PageID*# 509), and she reported that her pain was well-controlled with medications and reported no side effects. (*PageID*## 486, 499, 505, 507).

In November 2008, Dr. Mukhdomi completed a Basic Medical form reporting that Plaintiff experienced pain in the back and hip with myalgia and myositis. (*PageID*## 494-96). Dr. Mukhdomi opined that Plaintiff could stand/walk for less than two hours in an eight-hour day and for less than 30 minutes at a time. Dr. Mukhdomi also opined that

Plaintiff could not sit for more than two hours a day and for only 30 minutes at a time. She could only lift occasionally and only five pounds. (*PageID#* 496).

Dr. Mukhdomi twice noted that Plaintiff's urine drug screen was positive for marijuana, resulting in her discharge from pain management in February 2009 due to violating the narcotic contract. (*PageID##* 479, 485-86).

## III.  ADMINISTRATIVE REVIEW

### A.  <u>"Disability" Defined</u>

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.  <u>Social Security Regulations</u>

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence; *see PageID##* 70-71; *see also* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C.      **ALJ Lombardo's Decision**

At Step 1 of the sequential evaluation, ALJ Lombardo found that Plaintiff has not engaged in substantial gainful activity since July 28, 2006, the alleged onset date. (*PageID#* 71).

The ALJ found at Step 2 that Plaintiff has the severe impairments of left ankle tendonitis and mild degenerative disc disease and osteoarthritis of the lumbar spine.  (*Id.*).

The ALJ also found no substantial evidence of any other impairments which significantly limit Plaintiff's vocational capabilities, noting that Plaintiff's diagnosis of fibromyalgia, sleep apnea, neck pain, and depression do not cause more than minimal limitations in her ability to perform basic work activities and are therefore not severe. (*PageID## 73-76*).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Listing of Impairments. (*PageID# 77*).

At Step 4, the ALJ concluded that Plaintiff retained the RFC to perform the full range of medium[3] exertional work. (*Id.*).

The ALJ concluded at Step 4 that Plaintiff was capable of performing her past relevant work as a nurse aide and automobile parts salesperson, finding this work does not require the performance of work related activities that are precluded by the above RFC. (*PageID## 82-83*).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (*PageID# 83*).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by

---

[3]The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    Plaintiff's Contentions

Plaintiff argues that the decision of the ALJ denying her benefits should be reversed because the ALJ erred in her evaluation of Plaintiff's RFC where multiple treating physicians found limitations inconsistent with performing even sedentary work. (Doc. #7, *PageID#* 708).  According to Plaintiff, the ALJ also erred in failing to recognize fibromyalgia as a severe impairment.  (*Id.*).  Finally, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's pain and other symptoms, and the ALJ erroneously relied on a description of daily activities that preceded Plaintiff's onset date. (*Id., PageID#* 715).

### B.    Analysis

Dr. Henderson, Plaintiff's treating rheumatologist, diagnosed fibromyalgia after noting diffuse tender points in the trapezius, medial borders of the scapula, posterior paraspinous muscles, right lateral epicondyle, left anserine bursa, and both sacral notches. (*PageID#* 382).  Dr. Goldstick (the treating neurophysiologist), Dr. Jacob (the physical medicine and rehabilitation consultant), and Dr. Mukhdomi also have agreed with that diagnosis.  *See PageID##* 456-57, 494-96, 518-19, 643.  Nevertheless, the ALJ found that plaintiff's left ankle tendonitis, mild degenerative disc disease, and osteoarthritis of the lumbar spine were the only severe impairments.  Plaintiff challenges the ALJ's failure to accept Plaintiff's diagnosed fibromyalgia as a severe impairment.

A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. *See* 20 C.F.R. §404.1521. An impairment can be considered not severe only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted).

The United States Court of Appeals for the Sixth Circuit has recognized that fibromyalgia can be a severe impairment, and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients may present no objective signs of the condition. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)(*per curiam*). Patients with fibromyalgia can manifest normal muscle strength and neurological reactions, and may have a full range of motion. *Rogers, supra.* The process of diagnosing the condition includes (1) testing of a series of focal points for tenderness, and (2) ruling out other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

In concluding that Plaintiff's diagnosed fibromyalgia does not "rise[] to the level of a severe impairment," (*PageID# 73*), the ALJ relied on Dr. Duritsch, who examined Plaintiff on behalf of the state agency and reported that Plaintiff did not exhibit the typical fibromyalgia tender zones during his examination. (*Id.*, citing *PageID## 345-52*). The ALJ relied on this non-treating consulting physician to support her assessment

of Plaintiff's RFC. Consequently, opinions of one-time examining physicians are weighed under the same factors as treating physicians – including supportability, consistency, and specialization, *see* 20 C.F.R. §404.1572(d), (f) – which the ALJ failed to do.

Plaintiff has been treated for fibromyalgia and its associated pain by Dr. Henderson, her rheumatologist, and Dr. Syllaba, her treating pain management specialist. Anthony T. Jacob, M.D., who examined Plaintiff in May 2008 also found trigger points in the bilateral upper trapezius muscles and tenderness of the left sacroiliac joints. There was also tenderness of the left peroneal tendon, and ankle flexion increased the pain. (*PageID*## 456-57). Dr. Jacob diagnosed, in relevant part, a myofascial pain syndrome, in addition to chronic low back and neck pain. (*PageID*# 457). In November 2008, Dr. Mukhdomi completed a Basic Medical form for the Ohio Department of Job and Family Services, noting that Plaintiff experienced pain in the back and hip with myalgia and myositis. (*PageID*## 494-96). Plaintiff's treating and consulting physicians who have examined Plaintiff for her complaints of pain have agreed that she suffers from fibromyalgia, myofascial pain syndrome or myalgia, and myositis.

This Court concludes that the ALJ erred in relying on the opinion of the state agency examining physician in finding that Plaintiff's fibromyalgia is not a severe impairment. Not only did the ALJ improperly reject the diagnosis of the treating physicians, but Dr. Duritsch actually noted that Plaintiff has "[p]ossible fibromyalgia." (*PageID*# 346). Dr. Duritsch merely opined that Plaintiff "does not have the typical

17

fibromyalgia tender zones on todays examination." (*Id.*).  Contrary to the ALJ's assertions, however, Dr. Duristch's diagnosis did not rule out fibromyalgia.  In fact, quite the opposite: Dr. Duristch specifically indicated a diagnosis of fibromyalgia is possible. (*Id.*).  The ALJ did not appear to consider this portion of Dr. Duritsch's opinion, however, when she determined "it is not reasonable to find that the claimant suffers from this condition or that it somehow rises to the level of a severe impairment within the meaning of the Social Security Act." (*PageID#* 73).

The Court recognizes that the ALJ does not necessarily commit reversible error in finding that an impairment is not severe, but only if the ALJ finds at least one severe impairment and then goes on to evaluate the claimant's residual functional capacity in light of all impairments, both severe and non-severe.  *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987).  Here, the ALJ found that Plaintiff's left ankle tendonitis and mild degenerative disc disease and osteoarthritis of the lumbar spine constituted severe impairments.  (*PageID#* 71).  In considering Plaintiff's RFC and in assessing Plaintiff's credibility, however, the ALJ did not take into account fibromyalgia which, it is acknowledged, may have no objective signs.  *See* Rogers, 486 F.3d at 243.  Had the ALJ accepted the diagnosis of fibromyalgia, she may not have found that "[t]here is no evidence that medication or treatment cause any adverse side effects which could reasonably be expected to adversely affect her ability to perform work-related activities."  (*PageID#* 79).

On the other hand, it is true, as the Commissioner correctly notes, that fibromyalgia is not necessarily disabling. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988); *see also Sarchet v. Chater,* 78 F.3d 305 (7th Cir. 1996). But the present case is not one in which an ALJ considered a claimant's fibromyalgia and nonetheless found him or her not disabled. Here, the ALJ determined, contrary to the medical evidence, Plaintiff did not suffer from fibromyalgia, and as a result, did not further consider whether fibromyalgia may have any impact on Plaintiff's ability to perform work-related activities. *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 776 (6th Cir. 2008) ("'[F]ailure to consider the record as a whole undermines the [Commissioner's] conclusion.'" (quoting *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)).

To be upheld, an ALJ's decision must be reasonable in light of the record as a whole and "take[] into account whatever in the record fairly detracts" from the decision. *Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 843 (6th Cir. 2010). Consequently, the Sixth Circuit has held:

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Rogers*, 486 F.3d at 248 (6th Cir. 2007) (quoting *Hurst*, 753 F.2d at 519); *Cf. Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("An ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. also*

*Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

Remand is therefore required for further consideration of Plaintiff's fibromyalgia and any effect it may have on Plaintiff's ability to engage in work-related activities.[4]

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).

Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In light of the finding that the ALJ made an error of law, remand of this matter to the Social Security Administration pursuant to Sentence Four is appropriate, to permit the ALJ to reassess Plaintiff's RFC.  On remand, the ALJ should be directed to: (1) carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of

---

[4]This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error.  Thus, the undersigned need not resolve the alternative bases Plaintiff asserts.

fibromyalgia; (2) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations and Rulings, and as required by case law; and (3) reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB or SSI.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Mary E. Miller is under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and,

4.    The case be terminated on the docket of this Court.


July 23, 2012

                                        _____s/Sharon L. Ovington_____
                                              Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).